UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GARY ELLISON, | ) | Case No. 5:10CV294 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Docs. 31, 32, 40, and 41] |
| COUNTY OF SUMMIT, et al., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants. | ) | |

This matter is before the Court upon a motion for summary judgment (Doc. 32) filed by Defendants Summit County, Summit County Engineer's Office, and Alan Brubaker, P.E., P.S. The matter also appears before the Court on a motion for partial summary judgment filed by Plaintiff Gary Ellison. For the reasons stated herein, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Plaintiff's motion for partial summary judgment is DENIED.

**I.      Facts**

The underlying facts that gave rise to the complaint are largely undisputed. In 2008, Greg Bachman was in an election against Brubaker. Prior to the election, Ellison was employed by Bachman as a Highway Maintenance Superintendent. Ellison's position was unclassified, making him an at will employee. After Bachman lost the election, he offered Ellison a classified, union position as an Equipment Operator II ("EO II"). Ellison accepted and was scheduled to begin his employment on January 5, 2009.

1

On January 5, 2009, the day that Brubaker took office, he terminated Ellison's employment.  The EO II position was then posted, and Ellison applied.  Brubaker's Director of Administration, Steve Brunot, instructed his human resources supervisor to exclude Ellison from consideration. Ultimately, an African American, Ron Tullis, was chosen for the EO II position.

On February 10, 2010, Ellison filed this action.  The first count of Ellison's complaint alleges reverse race discrimination; his second count alleges a First Amendment violation; his third count claims wrongful discharge in violation of public policy; and his fourth count alleges a breach of contract.  The fifth count was previously dismissed by this Court and therefore is not at issue herein.

On November 15, 2010, Ellison moved for summary judgment on his breach of contract claim.  On that same day, Defendants moved for summary judgment on the entirety of Ellison's complaint.  Both motions are now fully briefed.

In addition, Ellison moved to strike the reply brief filed by Defendants due to the fact that it exceeded page limitations.  Defendants then moved for leave to amend their reply brief.  The motion for leave to amend (Doc. 41) is GRANTED.  The amended reply brief is deemed filed.  Accordingly, the motion to strike (Doc. 40) is DENIED AS MOOT.

## II.     Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R. Civ.P. 56(a). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

> on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> …
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III. Legal Analysis

#### A. Reverse Race Discrimination

Generallly, to establish a prima facie case of race discrimination, a plaintiff must initially show that he is a member of a racial minority. *Arendale v. City of Memphis*, 519 F.3d 587, 603

(6th Cir. 2008). Where a non-minority plaintiff alleges "reverse discrimination," as Ellison does here, that requirement "is adapted to require the plaintiff to prove background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (internal quotation marks and alterations omitted). "[T]he plaintiff bears the burden of demonstrating that he was intentionally discriminated against despite his majority status." *Id.* (internal quotation marks omitted). Ellison may show such "background circumstances" using "evidence of [defendants'] unlawful consideration of race as a factor in hiring in the past[,] [which] justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256 (6th Cir. 2002). The second and third prongs of Ellison's prima facie case remain familiar: that he was qualified for the job and suffered an adverse employment action, respectively. *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 66 (6th Cir. 1985). Under the fourth prong of the prima facie test, a "[p]laintiff must show that the [defendant employer] treated differently similarly situated employees of a different race." *Arendale*, 519 F.3d at 603.

Ellison's reverse race discrimination claim has two distinct components. First, Ellison alleges discrimination in his termination. Second, Ellison claims discrimination in the hiring process that followed his termination. This Court reviews both contentions.

With respect to his termination, it is clear that Ellison cannot satisfy the fourth prong of his prima facie case. The record herein is undisputed that Brubaker terminated every employee in the engineer's office that he was legally permitted to terminate. In contrast, Ellison offered no evidence that he was treated any differently during the termination process than any similar situated employees. Accordingly, his discrimination claim as it relates to his termination must fail as a matter of law.

4

Ellison's claim as it relates to the refusal to hire him, however, requires a different analysis.  The Court finds that there is sufficient evidence to satisfy the first prong of Ellison's prima facie case.  While Defendants assert that Ellison has offered no background circumstances that support his reverse discrimination claim, they are in essence asking the Court to weigh evidence.

> During his campaign for office, Brubaker sent out literature that included the following:
>
> Employee diversity and equal opportunity are essential to a strong, economically viable Summit County.  The work force of our County Engineer currently consists of about 150 employees.  The number of women and African Americans within this work force is not well balanced and the average pay of African Americans and women is considerably below the average pay of the workforce.  I pledge to work diligently to insure that the work force of the Engineer is more representative of that of the general population of Summit County and *to insure that women and African Americans are recruited to fill all positions*, including the higher paying technical and management positions.

Doc. 35-3 at 82 (emphasis added).  The above language, when viewed in a light most favorable to the non-moving party, certainly provides background circumstances that would suggest that African Americans may be given preference during the hiring process.

During his deposition, Brubaker admitted making the above statement, but asserted that the literature was based upon poor statistical information and removed a short time later.  However, the weight to be given to the above statement must be decided by a jury.  At the summary judgment stage, this Court cannot weigh the evidence. The fact remains that the statement was made and supports the "background circumstances" prong of Ellison's prima facie case.

The second and third prongs of Ellison's prima facie case are essentially undisputed.  He was qualified for the position and not offered the position.  Ellison has also presented sufficient evidence of the fourth prong of his prima facie case.  There is no genuine dispute that Ellison's

5

application was treated differently than the African American that was ultimately hired for the position.  While there is no dispute that Ellison was qualified for the position, his application was nearly immediately removed from consideration.  Meanwhile, despite significantly less qualifications, Ron Tullis was considered, interviewed, and ultimately awarded the position.

Defendants have attempted to justify this different treatment by asserting that they had legitimate reasons for excluding Ellison.  First, Defendants contend that Ellison's recent termination was a ground for excluding his application.  Next, Defendants assert that Ellison's high level of experience could lead to conflicts with other supervisory personnel.  Finally, Defendants expressed concern over Ellison's possible negotiating experience with the union.  Accordingly, the Court finds that Defendants have met their burden of providing legitimate reasons for their hiring decision.

As Defendants have met their burden, Ellison has the burden of demonstrating pretext.  To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

The Court finds that the record contains sufficient evidence of pretext to allow this claim to be heard by a jury.  First, despite significant experience, Ellison was quickly cast aside.  As Brunot stated during his deposition, "I took him out of contention at the very beginning of the process."  Doc. 35-8 at 36.  In contrast, Tullis was considered and ultimately hired for the position despite numerous flaws and inaccuracies in his application.  Again, Brunot himself stated, "There is some incomplete information, yeah."  Doc. 35-8 at 47.  Brunot admitted that

6

Tullis had failed to include all of his relevant work experience on his application and provided false information with respect to one of his former employers. When the Court takes into account the fact that the office received 92 applications for the EO II position, Tullis' hiring becomes even more suspect.

Taking all of this information into account and then noting that all of the alleged reasons for removing Ellison from consideration were entirely subjective, the Court finds that Ellison's hiring claim must be submitted to a jury. Ellison has presented sufficient evidence to demonstrate that there is a question of fact regarding whether the reasons given were sufficient to actually motivate the employment decision.

Finally, the Court notes that Defendants have argued that the Title VII aspect of Ellison's race discrimination claim is time barred. Ellison has not opposed this argument, and the Court finds it well taken. Accordingly, the above analysis applies solely to Ellison's state law race discrimination claims. Ellison's Title VII claims are dismissed.

### B. First Amendment

With respect to Ellison's free speech claim, the Sixth Circuit has recently explained the framework for analyzing such a claim.

> A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment. Those rights, however, are subject to limits beyond what the Constitution allows for the general public. Consequently, to establish a *prima facie* case of retaliation under 42 U.S.C. § 1983, a plaintiff must show that (1) the plaintiff engaged in constitutionally protected speech; (2) the public employer subjected the plaintiff to adverse action; and (3) the adverse action was motivated by the protected speech.

*Miller v. Canton*, 319 Fed. Appx. 411, 416 (6th Cir. 2009) (citations and quotations omitted).

Ellison has offered no evidence of any kind that his support for Bachman during the election played any role in his termination or in the decision to re-hire him. While Ellison

explains at length that Brubaker hired political allies after he took office, there is simply no evidence to suggest that Ellison's prior assistance to Bachman played any role his termination or the rehiring decision. Accordingly, Ellison's free speech claim must fail as a matter of law.

Ellison also raises a freedom of association claim in his response brief. It is highly doubtful that the complaint placed Defendants on notice of such a claim. While Count II expressly references the First Amendment, the underlying factual allegations contain no suggestion that a freedom of association claim would be raised. As such, it is very unlikely that such a claim is properly present in this matter.

Assuming *arguendo* that the complaint contains such a claim, Ellison has failed to supply law that would suggest he has a valid claim under this theory. It is undisputed that Defendants were concerned that Ellison's prior experience on the management side of negotiations could alter future negotiations if he were later on the labor side of negotiations. Ellison has offered no law to suggest that this consideration, in and of itself, is sufficient to warrant a freedom of association claim. Given that numerous reasons were given for the refusal to hire Ellison, the Court finds that such a claim cannot survive. Ellison's prior work experience and its effect on his future work performance were legitimate issues for consideration in the hiring decision. As such, they cannot serve as a basis for liability. Ellison's First Amendment claims both fail as a matter of law.

### C. Public Policy

Ellison's public policy claim is premised upon his argument that his First Amendment rights were violated. Having concluded that summary judgment is appropriate on those claims, his public policy claim also fails as a matter of law.

### D. Breach of Contract

Finally, both parties have moved summary judgment on Ellison's contract claim.  The parties sharply dispute whether Ellison formally took the EO II position or whether he was terminated from his prior position before his new position became effective.  The Court, however, need not resolve that dispute.  Assuming *arguendo* that Ellison formally started the EO II position, he still has no valid claim for breach of contract.

Article 21 of the collective bargaining agreement ("CBA") discusses probationary periods for classified employees.  Sections 21.2 and 21.3 provide as follows:

> Section 21.2. Promoted Employees.  Any bargaining unit employees promoted shall serve a probationary period of ninety (90) calendar days… *If the bid is to a lesser position, the rate of pay is at the former position during the probationary period.*  After probation, the rate of pay is at the post-probationary rate for the new position.
>
> Section 21.3.  Failure of Probationary Periods.  A newly hired employee[] may be terminated without right of appeal during the probationary period.
>
> A promoted employee failing to successfully complete his/her promotional probationary period of ninety (90) calendar days shall be returned to his/her former position classification and shall be advised of the reason(s).

Doc. 32-4 at 2 (emphasis added).  While Section 21.2 is titled "Promoted Employees," the above emphasized language makes it clear the probationary period applies to demotions as well.

Ellison has raised numerous arguments asserting that he should not have been subject to the probationary period.  First, Ellison claims that his job change was a reclassification.  However, Ohio Administrative Code § 124-1-02(X) defines reclassification as "the assignment of a different classification to a position."  Ellison sought to change jobs.  Accordingly, there is no legally viable argument that his job change was a reclassification.  Instead, as Ellison sought a lesser position, it is clear that his acceptance of the EO II position was a demotion.

Ellison also asserts that he should not be subject to the probationary period because his offer letter from Bachman did not reference such a period.  Ellison's argument that the offer letter was the sum total of his contract is incorrect as a matter of law.  As Ellison himself correctly argues, he did not have a contract.  Rather, as a classified employee, he would hold his position as a matter of law and be subject to the CBA.  Accordingly, Ellison cannot rely on the terms of the offer letter in an attempt to avoid the requirements of the CBA.  Furthermore, Ellison appears to argue that Bachman waived any probationary period by failing to include it in the offer letter.  However, Ellison has provided no legal authority that would suggest that Bachman could unilaterally alter the terms of the CBA.  Accordingly, Ellison's arguments lack merit.

The plain language of the CBA requires a probationary period for any demoted employee.  Ellison, therefore, was subject to a probationary period.  During that period, Ellison could be terminated without cause.  Such a termination would have returned Ellison to his unclassified position – a position from which Brubaker had sought to remove him.  Accordingly, Ellison cannot demonstrate any viable contract claim and that count in his complaint must fail.

### IV. Conclusion

Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  Ellison's motion for partial summary judgment is DENIED.  Ellison's racial discrimination in hiring claim will proceed to a jury trial.

IT IS SO ORDERED.


DATED: February 4, 2011                    __/s/  John  R.  Adams_____
                                           JUDGE JOHN R. ADAMS